No. 03-656

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 135

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

BENJAMIN P. RUIZ,

        Defendant  and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                     In and For the County of Missoula, Cause No. DC 03–72
                     Honorable Ed McLean, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Mark McLaverty; McLaverty & Associates, Missoula, Montana

        For Respondent:

            Honorable Mike McGrath, Attorney General; Barbara C. Harris,
            Assistant Attorney General, Helena, Montana

            Fred Van Valkenburg, Missoula County Attorney, Missoula, Montana

            Submitted on Briefs:  March 30, 2004

                          Decided:  May 25, 2004

Filed:

_____
                   Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     Benjamin Ruiz (Ruiz) appeals from the judgment entered by the Fourth Judicial District Court, Missoula County, on his convictions and sentences for the misdemeanor offenses of outfitting without a license and assisting an unqualified applicant in obtaining a resident license. We affirm in part, reverse in part and remand with instructions.

¶2     The issue on appeal is whether the District Court abused its discretion in denying Ruiz's motion for directed verdicts on both charges at the close of the prosecution's case-in-chief.

BACKGROUND

¶3     In June of 2001, the Montana Department of Fish, Wildlife and Parks (FWP) began investigating Ruiz based on information it received that he was acting as an outfitter without a license. During the investigation, FWP game wardens Randolph Arnold (Arnold) and Michael Martin (Martin) went undercover in an attempt to obtain outfitting services from Ruiz. Arnold posed as a Montana resident who worked as a consultant. Martin posed as one of Arnold's clients who resided in Iowa, but liked to hunt and fish in Montana. Between June and December of 2001, the two FWP wardens contacted Ruiz on various occasions to plan a waterfowl hunting trip. The hunting trip eventually took place on December 11, 2001, when Ruiz met the wardens at a motel in Missoula, Montana, escorted them to Flathead Lake, and provided equipment and advice for their hunting. In turn, Arnold paid Ruiz $275.

2

¶4 At the end of the December of 2001 waterfowl hunting trip, Ruiz and the wardens discussed the possibility of big game hunting the following fall. Martin informed Ruiz that he would like to obtain a Montana resident hunting license, but would not be able to establish residency in Montana in time for hunting season. Ruiz informed Martin that he could use Ruiz's home address in Stevensville, Montana, to obtain a Montana driver's license and also that Ruiz knew someone who would sell him a resident conservation and fishing license without a Montana driver's license. Once Martin obtained the resident conservation and fishing license, as well as a Montana driver's license, he could purchase a resident big game hunting license.

¶5 In May of 2002, Ruiz and the FWP wardens met for dinner in Missoula, during which they discussed the arrangements for purchasing a Montana resident conservation and fishing license for Martin. Following dinner, the three went to a Missoula sporting goods store where a friend of Ruiz's worked and Martin purchased a conservation and fishing license by using Ruiz's Stevensville address. Later that evening, Ruiz provided Martin with a fake rental agreement stating Martin was living at Ruiz's Stevensville address, which Martin could use to obtain a Montana driver's license.

¶6 Based on the activities outlined above, the FWP issued two tickets to Ruiz charging him with outfitting without a license and assisting an unqualified applicant to obtain a resident license. Ruiz was convicted of both offenses following a trial in the Missoula County Justice Court, and he appealed to the District Court. The District Court held a jury trial in June of 2003. After the State of Montana (State) presented its case-in-chief, Ruiz

moved the District Court for directed verdicts on both counts, asserting the State had failed to establish the requisite elements of the offenses. The court denied the motion and the jury found Ruiz guilty of both offenses. The District Court sentenced Ruiz and entered judgment on the convictions and sentences. Ruiz appeals.

## STANDARD OF REVIEW

¶7 We review a district court's denial of a motion for a directed verdict to determine whether the court abused its discretion. State v. Maloney, 2003 MT 288, ¶ 13, 318 Mont. 66, ¶ 13, 78 P.3d 1214, ¶ 13. In doing so, we determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. Maloney, ¶ 13.

## DISCUSSION

¶8 Did the District Court abuse its discretion in denying Ruiz's motion for directed verdicts on both charges?

¶9 At the close of the State's case-in-chief, Ruiz moved the District Court for directed verdicts on both charges against him, arguing that the State had failed to prove the elements of the offenses. The court denied the motion and Ruiz asserts the court abused its discretion in doing so. We address each charge in turn.

### a. Outfitting without a license

¶10 Ruiz contends that the District Court abused its discretion in denying his motion for a directed verdict on this count because the State failed to prove beyond a reasonable doubt

4

that any of his alleged outfitting activities occurred in Missoula County. Essentially, Ruiz argues that Missoula County was not the proper venue in which to bring this charge.

¶11     Generally, a criminal charge must be brought in the county where the offense was committed. Section 46-3-110(1), MCA. However, where an act requisite to the commission of an offense occurs or continues in more than one county, or where two or more acts requisite to the commission of the offense are committed, the charge may be filed in any county in which any of the acts occurred. Sections 46-3-112(1) and -112(2), MCA. Additionally, while venue is not an element of a charged offense, it is a jurisdictional fact which must be established by the prosecution at trial beyond a reasonable doubt. State v. Galpin, 2003 MT 324, ¶ 23, 318 Mont. 318, ¶ 23, 80 P.3d 1207, ¶ 23 (citations omitted).

¶12     Ruiz was charged with violating § 37-47-301, MCA, based on his activities in taking Arnold and Martin on a waterfowl hunting trip in December of 2001. That statute provides that

> [a] person may not act as an outfitter, guide, or professional guide or advertise or otherwise represent to the public that the person is an outfitter, guide, or professional guide without first securing a license . . . .

Section 37-47-301(1), MCA. An "outfitter" is defined as

> any person, except a person providing services on real property that the person owns for the primary pursuit of bona fide agricultural interests, who for consideration provides any saddle or pack animal; facilities; camping equipment; vehicle, watercraft, or other conveyance; or personal service for any person to hunt, trap, capture, take, kill, or pursue any game, including fish, and who accompanies that person, either part or all of the way, on an expedition for any of these purposes or supervises a licensed guide or professional guide in accompanying that person.

5

Section 37-47-101(11), MCA.

¶13 Arnold testified at trial that, on the morning of the waterfowl hunting trip, Ruiz met the two wardens at a motel in Missoula and escorted them--albeit in separate vehicles--through Missoula County on their way to Flathead Lake. Thus, Ruiz's acts of providing services and accompanying the wardens on their hunting expedition occurred, in part, within Missoula County. Consequently, pursuant to § 46-3-112, MCA, it was appropriate for the State to bring the outfitting without a license charge in Missoula County. We hold, therefore, that the District Court did not abuse its discretion in denying Ruiz's motion for a directed verdict on the outfitting without a license charge.

b. Assisting an unqualified applicant to obtain a resident license

¶14 The State also charged Ruiz with purposely or knowingly assisting an unqualified applicant in obtaining a resident license, in violation of § 87-2-106(8), MCA (2001), based on his actions in helping Martin--whom Ruiz believed to be a resident of Iowa, rather than Montana--obtain a resident conservation and fishing license. Ruiz moved the District Court for a directed verdict on this count, arguing that the State did not prove the elements of the offense because Martin was a Montana resident. The District Court denied the motion and Ruiz asserts error.

¶15 A person applying for a resident license is required to present identification establishing that the person is a resident of Montana. Section 87-2-106(1), MCA (2001). It is a misdemeanor offense for a person who does not meet the statutory residency criteria--in other words, a person who is an unqualified applicant--to make a false statement in order

6

to obtain a resident license. Section 87-2-106(7)(a), MCA (2001). Ruiz was charged with violating § 87-2-106(8), MCA (2001), which provides that "[i]t is unlawful and a misdemeanor for a person to purposely or knowingly assist an unqualified applicant in obtaining a resident license in violation of this section."

¶16    It is undisputed that Martin was a Montana resident at the time he applied for a Montana resident conservation and fishing license and, consequently, was qualified to obtain such a license. Therefore, notwithstanding Martin's undercover persona as an Iowa resident, Ruiz did not assist an unqualified applicant to obtain a resident license because Martin actually was a Montana resident.

¶17    The State contends that, in proving Ruiz violated the statute, it is sufficient that Ruiz believed he was assisting a nonresident in obtaining a Montana resident license, regardless of whether Martin was a resident or not. As stated above, however, § 87-2-106(8), MCA (2001), provides that it is unlawful to "assist an unqualified applicant . . ." to obtain a resident license. To interpret the statute in the manner urged by the State would require us to insert language into § 87-2-106(8), MCA (2001), stating it is unlawful to assist an applicant one believes to be unqualified to obtain a resident license. We may not do so. In interpreting statutes, our role is "to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA.

¶18    In order to prove a violation of § 87-2-106(8), MCA (2001), the State must prove that the applicant for the license was unqualified. As a result, the State was required to prove that

7

Martin was not a resident of Montana. The State failed to do so. Consequently, we hold that the District Court abused its discretion in denying Ruiz's motion for a directed verdict on the charge that he assisted an unqualified applicant to obtain a resident license.

¶19 Affirmed in part, reversed in part and remanded for the entry of an amended judgment dismissing the assisting an unqualified applicant to obtain a resident license conviction and deleting the related sentence.

/S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ JIM RICE

8

Justice W. William Leaphart dissenting.

¶20 I dissent on the question of whether the State proved venue in Missoula County for the offense of outfitting without a license. The hunting trip in question took place on December 11, 2001, when Ruiz met the wardens at a motel in Missoula, Montana, escorted them to Flathead Lake and provided equipment and advice for their hunting venture outside of Missoula County. Venue is proper in any county in which any of the acts requisite to the commission of the offense occurred. Section 46-3-112(1) and (2), MCA.

¶21 As the Court notes, an "outfitter" is defined as:

[A]ny person, except a person providing services on real property that the person owns for the primary pursuit of bona fide agricultural interests, who for consideration provides any saddle or pack animal; facilities; camping equipment; vehicle, watercraft, or other conveyance; or personal service for any person to hunt, trap, capture, take, kill, or pursue any game, including fish, and who accompanies that person, either part or all of the way, on an expedition for any of these purposes or supervises a licensed guide or professional guide in accompanying that person.

Section 37-47-101(11), MCA.

¶22 Although the actual hunting did not commence until the parties were in the Flathead Lake area, the Court concludes that the fact that Ruiz met the wardens at a Missoula motel and escorted them, in a separate vehicle, to Flathead Lake, constituted the "providing of personal services" and "accompanying" for purposes of outfitting without a license. In my view, this analysis stretches venue principles beyond credibility. As far as "accompanying" goes, Ruiz was not even in the same vehicle with the wardens. In the context of the criminal offense at issue, "accompany" means to be with a person while that person is engaged in hunting or taking any game, not merely traveling on the same highway to a common

9

destination. As to the "providing of personal service," Arnold (an actual Montana resident, posing as a Montana consultant) hardly needed "escorting" to get from Missoula to Flathead Lake. The occurrences in Missoula County were preparatory at best; they were not acts requisite to the commission of the offense of outfitting without a license, which only occurred in the Flathead Lake area–outside of Missoula County. Section 46-3-112(1) and (2), MCA. Outfitting is defined as providing a personal service "for consideration." Obviously, Ruiz would not have demanded or received "consideration" from Arnold and Martin for meeting them at the motel and accompanying them to Flathead Lake. The personal service–i.e the "outfitting"–did not occur until they reached Flathead Lake.

¶23 The State failed to prove venue in Missoula County, and, thus, the District Court abused its discretion in denying Ruiz's motion for a directed verdict on the outfitting without a license charge.

/S/ W. WILLIAM LEAPHART