No. 04-701

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 339N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

EDWARD L. SCHMIDT,

Defendant and Appellant.

APPEAL FROM:    The District Court of the Twelfth Judicial District,
In and For the County of Hill, Cause No. DC 2004-003,
Honorable David G. Rice, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Daniel A. Boucher, Altman & Boucher, Havre, Montana
Francis McCarvel, Attorney at Law, Helena, Montana

For Respondent:

Hon. Mike McGrath, Montana Attorney General, Barbara C. Harris,
Assistant Attorney General, Helena, Montana

Cyndee L. Peterson, Hill County Attorney, Havre, Montana

Submitted on Briefs:  June 8, 2005

Decided:  December 28, 2005

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Pursuant to Section 1, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Edward L. Schmidt (Schmidt) appeals his conviction of Official Misconduct. We reverse.

## ISSUE

¶3     The dispositive issue on appeal is whether the District Court properly denied Schmidt's motion for a directed verdict.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     Schmidt began working as a probation officer for the Montana Department of Corrections in approximately 1993. In January 2003, he was assigned to supervise convicted felon Karen Parker (Parker) during a two-year deferred sentence. Schmidt supervised Parker until June 30, 2003, and had regular and frequent contact with her in his official capacity during these months. In July 2003, after learning that Schmidt was no longer her probation officer, Parker called the Hill County Sheriff's Department and reported that Schmidt had engaged in sexual activities with her. She alleged that starting in February or early March 2003, Schmidt began discussing sexual matters with her on the telephone. Subsequently, Parker claimed, he touched her in a sexual manner, and masturbated to ejaculation in her

2

presence on three occasions. On one such occasion, he ejaculated on her stomach and on another occasion, on her couch. While it is undisputed that Parker consented to Schmidt's sexual advances, she claims to have done so because he had significant power over her and could control whether or not she went to jail. She acknowledged that because Schmidt knew she had started drinking again--a violation of her probation--he could have her probationary sentence revoked.

¶5      On July 11, 2003, an agent from the Division of Criminal Investigation examined Parker's couch and nearby carpet with an ultraviolet light in an effort to locate possible evidence. Samples of couch material and carpet were removed and sent to the Montana State Crime Lab for evaluation. A forensic scientist at the Lab testified that the sample of couch material contained seminal fluid from which she was able to obtain a DNA sample. A comparison of the DNA sample obtained from the couch and a DNA sample provided by Schmidt showed some chromosomal consistency. While Schmidt was not determined to be the donor, he was not excluded either.

¶6      On January 8, 2004, the State of Montana charged Schmidt with official misconduct, a misdemeanor as set forth in § 45-7-401, MCA. Schmidt entered a plea of not guilty. A bench trial was held on June 22 and 23, 2004. At the conclusion of the State's case-in-chief, Schmidt moved for a directed verdict of dismissal arguing that the State failed to establish all the elements of the offense. Particularly, Schmidt asserted that the State failed to provide evidence that he had acted in "excess of his lawful authority," as required by the statute. The District Court denied the motion from the bench, and at the close of trial, concluded that

3

Schmidt was guilty of official misconduct. The court sentenced Schmidt to six months in the county jail, deferred, subject to certain conditions including, but not limited to, a $250.00 fine, fifty hours of community service, and no contact with Parker. Schmidt appeals.

## STANDARD OF REVIEW

¶7 We review a district court's denial of a motion for a directed verdict to determine whether the district court abused its discretion. *State v. Hill*, 2005 MT 216, ¶ 14, 328 Mont. 253, ¶ 14, 119 P.3d 1210, ¶ 14. In so doing, we determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *State v. Ruiz*, 2004 MT 135, ¶ 7, 321 Mont. 357, ¶ 7, 91 P.3d 565, ¶ 7 (citation omitted).

## DISCUSSION

¶8 Schmidt was charged with misdemeanor official misconduct under § 45-7-401(1)(c), MCA. The statute provides:

> A public servant commits the offense of official misconduct when in his official capacity he commits any of the following acts:
> (a) purposely or negligently fails to perform any mandatory duty as required by law or by a court of competent jurisdiction;
> (b) knowingly performs an act in his official capacity which he knows is forbidden by law;
> (c) with the purpose to obtain advantage for himself or another, performs an act in excess of his lawful authority;

4

(d) solicits or knowingly accepts for the performance of any act a fee or reward which he knows is not authorized by law; or
(e) knowingly conducts a meeting of a public agency in violation of 2-3-203.

For purposes of the case before us, the State argues that official misconduct occurred when Schmidt: 1) as a public servant, 2) in his official capacity, 3) committed an act in excess of his lawful authority, 4) with the purpose of obtaining an advantage for himself. Section 45-7-401(1)(c), MCA. The only element at issue in this case is whether the act performed by Schmidt exceeded his lawful authority as Parker's probation officer.

¶9     Schmidt does not argue that he did not engage in sexual activity with Parker. Additionally, there is no issue of consent. Rather, Schmidt argues that for him to commit an act in excess of his lawful authority, the act must be in violation of a statute or regulation. He maintains that engaging in consensual sexual activity with Parker was not in violation of any statute or regulation.

¶10     Schmidt observes, without elaboration, that Montana adopted its "official misconduct" statute from Illinois. *See* § 720 ILCS 5/33-3 (formerly Ill. Rev. Stat., 1961, c. 38, § 33-3). The substance of Schmidt's argument derives from the Commission Comments and Compiler's Comments included in the annotations for § 45-7-401, MCA. The Criminal Law Commission's Comments included:

*Source*: Ill. C.C. 1961, Chapter 38, § 33-3.

The intent of this section is to provide criminal sanctions when a public servant intentionally acts in a manner he knows to be contrary to regulation or statute. The existence of the section does not dispute the fundamental premise that inadequate performance in public office should be regulated by civil service.

The section provides punishment for failure to comply with specific mandatory duties set forth outside of the Criminal Code. It also provides punishment for failure to comply with mandatory duties which are set forth in provisions of the Criminal Code.

¶11 Schmidt further argues that while the 1999 Legislature amended § 45-5-503, MCA, by inserting subsection (3)(d), and making it unlawful for corrections officers to engage in sexual activity with inmates even if the inmate consented, the Legislature did not change the law to expressly prohibit such consensual activity between a probation officer and a probationer.

¶12 The State counters that "exceeding lawful authority" is not synonymous with "violation of a statute or regulation" and that a violation of a statute or regulation is not an element of this misdemeanor crime. The State asserts that § 46-23-1011(3), MCA, requires that a probation officer "regularly advise and consult with the probationer to encourage the probationer to improve the probationer's condition and conduct and shall inform the probationer of the restoration of rights on successful completion of the sentence." The State posits that Schmidt's pursuit of his own sexual gratification with a probationer over whom he had legal supervisory control does not constitute advice or consultation tending to encourage Parker, nor did it improve Parker's condition and conduct. The State further submits that the overall purpose of probationary supervision is to benefit the probationer, and in the case before us, Schmidt's behavior benefited himself, not Parker.

¶13 The District Court concluded that Schmidt was a public servant as defined by § 45-2-101(63), MCA (2003), and that because a probation officer is basically on call 24 hours per

6

day, any activities involving one of his probationers would have been performed in his official capacity. The District Court also concluded that Schmidt's sexual contact with Parker was for his gratification and "advantage."

¶14 The District Court also agreed with the State that Schmidt need not violate a statute or regulation in order to exceed his lawful authority as a probation officer. The court noted the absence of any case law interpreting § 46-23-1011(3), MCA, but recited several examples of acts that a probation officer could commit that would be in excess of his or her authority but not run afoul of a statute or regulation, such as requiring a probationer to work for the probation officer for small wages, or lending a probationer money at an interest rate beyond what banks would charge.

¶15 In response to Schmidt's argument that the Legislature did not choose to impose restrictions on sexual activity between probation officers and probationers, the District Court opined that the change in the statute to restrict such activity between *corrections officers and inmates* "shows a clear intent to limit even consensual sexual activity by those in a position of authority over persons in custody." The District Court ultimately concluded that § 46-23-1011(3), MCA, defined the scope of the lawful authority granted to probation officers, and thus to Schmidt. The court determined that under § 46-23-1011(3), MCA, Schmidt was authorized only to "supervise, advise and consult," and that by engaging in sexual conduct with Parker, he acted in excess of his authority.

¶16 Section 45-7-401, MCA, under which Schmidt was convicted (see ¶ 7), was enacted in

7

1973, and is substantively identical to Illinois statute § 720 ILCS 5/33-3.[1] We have not had occasion in Montana to interpret subsection (1)(c) of this statute, the specific subsection under which Schmidt was charged. We have long adhered to the rule that when Montana's Legislature adopts a statute from a sister state, Montana courts also adopt the construction of the statute as determined by the highest court of the sister state. *See In re Wisner* (1907), 36 Mont. 298, 311, 92 P. 958, 961; *State v. Tower* (1994), 267 Mont. 63, 67, 881 P.2d 1317, 1319; *Barnes v. City of Thompson Falls*, 1999 MT 77, ¶ 19, 294 Mont. 76, ¶ 19, 979 P.2d 1275, ¶ 19. Therefore, we turn to the Illinois courts's interpretation of § 720 ILCS 5/33-3 to determine whether a public servant must violate a statute or a regulation in order to commit official misconduct.

¶17 In *Fellhauer v. City of Geneva* (Ill. 1991), 568 N.E.2d 870, the Illinois Supreme Court unequivocally interpreted § 33-3 to require the State to allege and prove that a public officer's act "in excess of his lawful authority" was a violation of the law, holding,

> [A] charge of official misconduct under section 33-3 must specify the 'law' allegedly violated by the officer or employer in the course of committing the offense. (*See, e.g., People v. Bassett* (1988), 169 Ill. App. 3d 232, 235, 119 Ill. Dec. 928, 523 N.E.2d 684; *People v. Weber* (1985), 133 Ill. App. 3d 686, 690-91, 88 Ill. Dec. 769, 479 N.E.2d 382 ("law" includes civil or penal statute,

---

[1] Section 720 ILCS 5/33-3. Official Misconduct. A public officer or employee commits misconduct when, in his official capacity, he commits any of the following acts: (a) Intentionally or recklessly fails to perform any mandatory duty as required by law; or (b) Knowingly performs an act which he knows he is forbidden by law to perform; or (c) With intent to obtain a personal advantage for himself or another, he performs an act in excess of his lawful authority; or (d) Solicits or knowingly accepts for the performance of any act a fee or reward which he knows is not authorized by law.

supreme court rule, administrative rule or regulation, or tenet of professional code).)

*Fellhauer*, 568 N.E.2d 875.

¶18 Subsequently, the Illinois Appellate Court for the Second District relied on this rule in deciding numerous issues in the case of *People v. Grever* (Ill. App. Ct. 2004), 819 N.E.2d 6, 27. We find the court's reiteration of Illinois's interpretation of its statute instructive, especially as it applies to subsection 33-3(c):

> In order to properly charge official misconduct under subsection (c) of section 33-3, the State must allege that a public officer or employee, in his official capacity and with intent to obtain a personal advantage for himself or another, knowingly performed an act in excess of his lawful authority. 720 ILCS 5/33-3(c) (West 1998); *People v. Bassett*, 169 Ill. App. 3d 232, 234-35, 119 Ill. Dec. 928, 523 N.E.2d 684(1988). It is well established that "a charge of official misconduct under section 33-3 must specify the 'law' allegedly violated by the officer or employe[e] in the course of committing the offense." *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 506, 154 Ill. Dec. 649, 568 N.E.2d 870 (1991). "Law, in its generic sense, is a body of rules of action or conduct prescribed by controlling authority and having binding legal force." *People v. Samel*, 115 Ill. App. 3d 905, 911, 71 Ill. Dec. 738, 451 N.E.2d 892 (1983), citing Black's Law Dictionary 795 (5th ed. 1979). "Law" includes a civil or penal statute, supreme court rule, administrative rule or regulation, or tenet of professional responsibility. *Fellhauer*, 142 Ill. 2d at 506, 154 Ill. Dec. 649, 568 N.E.2d 870, citing *People v. Weber*, 133 Ill. App. 3d 686, 690-91, 88 Ill. Dec. 769, 479 N.E.2d 382 (1985). Accordingly, to properly state the offense of official misconduct the indictment must specify facts indicating a violation of an identifiable statute, rule, regulation, or tenet so as to demonstrate how a defendant exceeded his lawful authority. *Bassett,* 169 Ill. App. 3d at 235, 119 Ill. Dec. 928, 523 N.E.2d 684; *Weber*, 133 Ill. App. 3d at 689-91, 88 Ill. Dec. 769, 479 N.E.2d 328; *Samel*, 115 Ill. App. 3d at 911, 71 Ill. Dec. 738, 451 N.E.2d 892.

¶19 We find the behavior alleged to have been committed by Schmidt reprehensible and opportunistic. However, in light of our longstanding rule that we adopt the construction

9

placed on a borrowed statute by the high courts of that state, we conclude, as has Illinois, that because Schmidt's conduct did not violate a statute or regulation, it was not "in excess of his lawful authority." Therefore, his conduct was not criminal and his conviction must be reversed. In the event this is not the result intended by the Legislature, we urge it to revisit the consent provisions of § 45-5-503, MCA.

## CONCLUSION

¶20     For the foregoing reasons, we conclude the District Court erred in denying Schmidt's motion for a directed verdict. Reversed and remanded for further proceedings consistent with this Opinion.

/S/ PATRICIA O. COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART

Justice Jim Rice dissenting.

¶21     I respectfully dissent.

¶22     As the State notes, § 46-23-1011(1), MCA, requires that the Department's probation officers shall supervise probationers "in accord with the conditions set by a sentencing judge." Probation officers are further required to "regularly advise and consult with the

probationer to encourage the probationer to improve the probationer's condition and conduct . . . ." Section 46-23-1011(3), MCA.[1]

¶23 Schmidt's conduct violated these provisions. His episodes of sexual behavior while supervising Parker were not "in accord with the conditions set by a sentencing judge," § 46-23-1011(1), MCA, and thus exceeded his lawful supervisory authority. Further, there is no dispute that his actions were for his own benefit, that he took sexual advantage of Parker, and thereby mistreated her. As such, he also violated his statutory duty "to encourage the probationer to improve the probationer's condition and conduct . . . ." Section 46-23-1011(3), MCA.

¶24 These statutory violations are sufficient to satisfy the elements of § 45-7-401(1)(c), MCA. I would uphold Schmidt's conviction.

/S/ JIM RICE

Justice Brian Morris joins in the dissent of Justice Rice.

/S/ BRIAN MORRIS

[1] If these statutes provide insufficient guidance for a probation officer, the officer "may recommend and a judge may modify or add any condition of probation or suspension . . ." following a hearing. Section 46-23-1011(4), MCA. There is no evidence that Schmidt sought modification of his statutory duties.

11